428                    October 22, 2025                    No. 923

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD ROLAND PELOQUIN,
*Defendant-Appellant.*

Washington County Circuit Court
22CR54315; A183064

Oscar Garcia, Judge.

Submitted September 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Chief Deputy Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant appeals his convictions for endangering the welfare of a minor, ORS 163.575, and private indecency, ORS 163.467. In his sole assignment of error, he challenges the denial of his pretrial motion to suppress. He argues that his statements should have been suppressed because he was interrogated without *Miranda* warnings while in compelling circumstances. We conclude that the trial court did not err in concluding that the circumstances were not compelling and, accordingly, affirm.

Article I, section 12, of the Oregon Constitution safeguards the right against compelled self-incrimination. *State v. Thomas*, 343 Or App 560, 565, ___ P3d ___ (2025); *see* Or Const, Art I, § 12 ("No person shall * * * be compelled in any criminal prosecution to testify against himself."). One manifestation of that right is that police officers must provide *Miranda* warnings before interrogating someone in compelling circumstances. *State v. Reed*, 371 Or 478, 483, 538 P3d 195 (2023). Further, if a person in compelling circumstances unequivocally invokes their right against compelled self-incrimination, the interrogation must stop. *Thomas*, 343 Or App at 565.

"Compelling circumstances exist when, taking into account the totality of the circumstances, a reasonable person in the defendant's position would feel compelled to answer a police officer's questions." *State v. Dunlap*, 215 Or App 46, 57, 168 P3d 295 (2007). The analysis does not turn on the subjective beliefs or intentions of the officer or suspect but, rather, "how a reasonable person in the suspect's position would have understood his or her situation." *Thomas*, 343 Or App at 566 (internal quotation marks omitted). The following nonexclusive factors are relevant in determining whether compelling circumstances existed: "(1) the location of the encounter, (2) the length of the encounter, (3) the amount of pressure exerted on the defendant, and (4) the defendant's ability to terminate the encounter." *State v. Andrews*, 335 Or App 59, 67, 557 P3d 165 (2024). In applying those factors, courts look at the totality of the circumstances, with the "overarching inquiry" being "whether the officers created the sort of police-dominated atmosphere

that *Miranda* warnings were intended to counteract." *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006). It is the state's burden to prove that a person's unwarned statements were made under noncompelling circumstances. *Id.* at 639. "Whether the circumstances were compelling is a question of law that we review for legal error, and we are bound by the trial court's findings of historical fact if there is any evidence in the record to support them." *Reed*, 371 Or at 488.

Here, we conclude that a reasonable person in defendant's position would not have felt compelled to answer questions. First, the location of the encounter being defendant's driveway weighs against finding the circumstances compelling. *E.g., State v. Turnidge (S059155)*, 359 Or 364, 402, 374 P3d 853, *cert den*, 580 US 1021 (2016) (that questioning occurred "at or within close proximity to [the defendant's] home" "significantly" reduced "the likelihood that the circumstances were inherently compelling for purposes of the Article I, section 12, analysis"); *State v. Shaff*, 343 Or 639, 646, 175 P3d 454 (2007) ("[T]he fact that the interview occurs in familiar surroundings diminishes the police-dominated atmosphere that *Miranda* warnings were intended to counteract."). The minimal police presence also did not create a police-dominated atmosphere. *See State v. Heise-Fay*, 274 Or App 196, 203, 360 P3d 615 (2015) (noting that a "significant" police presence can "tend to establish a police-dominated atmosphere" in an otherwise familiar place). Defendant was questioned by an investigator for the Oregon Department of Human Services (ODHS) with a single police officer silently standing by.[1]

Second, the length of the encounter was short—only 20 minutes—which also weighs against the circumstances being compelling. *See Thomas*, 343 Or App at 568 (that interview lasted 50 minutes was a factor that favored the state); *State v. Phillips*, 302 Or App 618, 624-25, 459 P3d 909, *rev den*, 366 Or 552 (2020) (a two-hour encounter at the defendant's home "d[id] not weigh strongly in favor of" compelling circumstances).

---

[1] It was the ODHS investigator, not the police officer, who questioned defendant in this case. The parties' arguments assume that the compelling circumstances analysis is not altered by the questioner being a ODHS employee rather than a police officer, and we assume the same for purposes of this case.

Third, the amount of pressure exerted was minimal and noncoercive. The ODHS investigator asked defendant about allegations that had been made against him, but she did so with a nonaggressive tone and demeanor. Defendant quickly admitted to the allegations, and the remainder of the questioning concerned those allegations and others that were similar. Defendant intermittently declined to answer a question, including explicitly pointing out his right not to answer, and the investigator accepted his choice not to answer certain questions. Significantly, the ODHS investigator did not use defendant's admissions coercively. *See Shaff*, 343 Or at 650 (explaining that "what matters is not whether evidence of guilt was apparent to the suspect; rather, it is whether the officers used that evidence in a coercive manner"). Further, the investigator did not press defendant when he refused to answer certain questions, and, although clearly concerned, she was not unduly accusatory.

Finally, there was no indication that defendant lacked the ability to terminate the encounter, and defendant was not physically restrained from returning to his house until he was arrested. But it is also true that no one affirmatively told defendant that he could terminate the encounter. On the whole, we view the fourth factor as neutral or slightly weighing in defendant's favor. *See State v. Rodriguez*, 337 Or App 728, 738, 564 P3d 471 (2025) (concluding that the fourth factor weighed "slightly in favor of finding compelling circumstances" where police did not tell the defendant she could terminate the encounter, and we could not say that a reasonable person in the defendant's position would have understood she was under no obligation to answer questions).

Considering those nonexclusive factors and the totality of the circumstances, as captured on the officer's body-cam footage, we agree with the trial court that defendant was not questioned in compelling circumstances. Defendant therefore did not need to be provided with *Miranda* warnings, and the questioning did not have to stop in response to any invocation of rights by defendant.

Affirmed.